[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1465 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1466 
OPINION
 I. INTRODUCTION
Carmen J. (Carmen) appeals from an order permanently terminating her parental rights with respect to Precious J. (Precious). The issue presented is whether Carmen, an incarcerated parent, received reasonable reunification services prior to the termination of her parental rights. We find insufficient evidence in this record to support the juvenile court's findings that reasonable services were provided. Accordingly, we reverse the judgment terminating Carmen's parental rights.
 II. FACTUAL BACKGROUND
A. The Petition and Merced County Proceedings
On June 21, 1993, a juvenile dependency petition (the Petition) was filed pursuant to section 300, subdivision (g) of the Welfare and Institutions Code.[1] The Petition was filed in Merced, the county where Carmen was incarcerated at the Central California Women's Facility. The Merced County Human Services Agency (the Agency) alleged that Precious was born on June 18, 1993, while Carmen was incarcerated. The alleged father was a merchant seaman whose whereabouts were unknown. Precious was taken into protective custody as there was no responsible adult available to care for her.
According to an Agency report prepared in anticipation of the jurisdictional hearing, Carmen had several arrests and convictions for petty theft but her prior criminal record did not involve drug or alcohol use or crimes of violence or child abuse. The report also states that Carmen denied a history of drug use, desired that her daughter be placed in temporary foster care, and agreed to cooperate with the Agency and take a parenting class while incarcerated.
Carmen was present at a July 13, 1993, combined jurisdiction and transfer-out hearing. The hearing was continued to the next day because a judge was not available. Carmen waived her right to appear at the continued *Page 1468 
hearing, during which the court found the allegations in the Petition to be true and exercised jurisdiction over Precious. The court also found that Contra Costa was the county of Precious's legal residence and ordered that the case be transferred there.
B. The Combined Dispositional and Transfer-in Hearing
A dispositional report was prepared by the Contra Costa County Department of Social Services (the Department). The report states that Carmen "has an extensive history of arrests and convictions for theft but has no criminal history or arrests for crimes of violence or those involving drugs or alcohol. She is incarcerated on a parole violation and forgery charge." The Department expressed the view that, although Carmen's prior criminal history would not directly endanger a child, "frequent arrests and convictions can prevent her from providing the stability and continued care a small child needs." The report also states that Carmen was scheduled to be released from prison on February 3, 1994.
The combined dispositional transfer-in hearing was held on September 17, 1993. Carmen was present and represented by a public defender. The foster mother who had cared for Precious in Merced County requested that Precious be allowed to stay with her. She expressed her commitment to reunification of parent and child and her willingness to facilitate visitations. The Department questioned whether this foster parent was truly committed to reunification and urged that the transfer occur. The foster mother's request to keep Precious in Merced was denied.
Carmen's counsel impressed on the court that Carmen was anxious to see her child and asked the court "to order Social Services to make visitation happen in some way." Referring to In re BrittanyS. (1993) 17 Cal.App.4th 1399 [22 Cal.Rptr.2d 50], the court also expressed concern that visitation not be impeded by the transfer of this matter out of the county where Carmen was incarcerated. The Department assured the court and Carmen of its commitment to facilitate visitation: "We've talked about it because I don't want to see that we have the child up here and then somehow it's just never possible for the next five-and-a-half months to get the child to Chowchilla, because the mother can't come to where the child is. So we're working on a commitment to take the child down to Chowchilla for visitation . . . make all arrangements necessary with the prison beforehand so someone doesn't get down there to have the gate slammed in their face. . . . Because we take it seriously."
The court was "reassured" by the Department's representation that it would facilitate visitation and stated: "So moving the child somewhat farther *Page 1469 
from the prison may actually facilitate rather than discourage the visitation that we know needs to take place if it's at all possible." The court continued jurisdiction over Precious, ordered the Department to arrange visitation, and adopted a modified version of the Department's proposed reunification plan. The plan contained the following requirements: "1. While incarcerated, minor's mother must maintain contact with the minor's caretakers by phone or mail. [¶] 2. Upon release, minor's mother must set up a clean stable living situation suitable for a young child. [¶] 3. Minor's mother must abide by all terms of her parole. [¶] 4. Minor's mother must visit the minor on a schedule set up by the Social Service Department. [¶] 5. Minor's mother must keep the Social Service Department aware of her whereabouts and notify the department of any change of address or telephone number within five days."[2]
C. The Six-month Review
The six-month review was originally noticed for February 25, 1994. The Department's six-month report states that Carmen contacted the social worker from prison on two occasions. During the first conversation, Carmen stated that she was going to school and taking parenting and substance abuse classes. Carmen contacted the social worker a second time to tell her she would need to find a temporary residence upon her anticipated release. The social worker facilitated a placement at the Rectory, a 90-day residential drug rehabilitation program. Carmen was paroled into Contra Costa County on January 10, 1994.
The six-month report does not disclose whether any visits between Carmen and Precious occurred during the period of Carmen's incarceration. However, the report indicates that Carmen kept in touch by telephone with Precious's foster parent and that Carmen visited Precious on January 10, 1994, was pleased with the care Precious was receiving, and liked the foster mother.
Carmen began living at the Rectory on January 12, 1994. Initially, Carmen did well in the program; she was organized, did her chores and followed the rules. In addition she seemed "concerned about herself and the welfare of her daughter." However, program facilitators were dissatisfied with Carmen's lack of participation at group meetings and her inability to verbalize her feelings. When she was confronted about this, Carmen became verbally abusive. When Carmen left the facility for four hours without permission, *Page 1470 
she was placed on restriction and a visit with her daughter, scheduled for that weekend, was canceled. Angered by this punishment, Carmen left the program.[3] On February 17, one week after leaving the Rectory, Carmen was arrested for petty theft and confined to the Alameda County jail.
After several continuances the six-month review hearing took place on June 3, 1994. Carmen was present. By this time, Carmen had been convicted in Alameda County and was also found to have violated her parole. As a result, it was expected she would remain incarcerated until the end of September, 1994.[4] Carmen again expressed through counsel her strong desire to reunite with her daughter. Counsel indicated Carmen would participate in relevant prison programs and that she intended to return to the Rectory upon her release. The court found that reasonable services had been provided and would continue to be provided to Carmen. The court continued jurisdiction over Precious, warned Carmen she only had two months to work on her reunification plan, and ordered the Department to arrange visitation twice monthly for one hour.
D. The 12-month Review
The 12-month review hearing was set for August 5, 1994. The Department report recommended termination of reunification services and the setting of a section 366.26 hearing. The report states that Carmen complied with the requirement that she maintain contact with the minor's caretaker by phone or mail, but that she failed to comply with some other provisions of the reunification plan, including the visitation requirement. The 12-month review hearing commenced as scheduled with Carmen present, but was continued to September 30, 1994. Carmen was released from prison on September 13, 1994.
Carmen did not appear at the September 30 hearing but her counsel contested termination of Carmen's parental rights. A pretrial hearing was set for October 21, 1994. The contested hearing was set for December 2, 1994. Carmen did not appear at either hearing. At the December 2 hearing, Carmen's counsel requested a hearing on a motion to withdraw as counsel. Both the motion to withdraw and the contested 12-month review were set for hearing on December 16, 1994. *Page 1471 
Carmen did not appear at the December 16 hearing. Carmen's counsel questioned whether Carmen was notified of the continued hearing date, stating: "I did not inform her of today's date, however. It looks like that was never done." Although it acknowledged the lack of notice, the court nevertheless proceeded with the hearing. The court denied Carmen's counsel's motion to withdraw[5] and then, without any further discussion, found that reasonable services had been provided to Carmen and that there was no substantial probability of a return of custody if reunification efforts were continued for an additional six months. Reunification services were terminated and a section 366.26 hearing was set for March 28, 1995. However, the court ordered that visitation continue at a minimum of one hour per month.
On January 6, 1995, Carmen's counsel made a second motion to withdraw as counsel. Her moving papers represented that she had not heard from Carmen since August 5, 1994, and that Carmen had not responded to telephone calls or letters. Carmen's mother had indicated to counsel that Carmen had received counsel's letters. Carmen was served by mail with her counsel's motion to withdraw, which was ultimately denied by the court.
E. The Section 366.26 Hearing
The Department's section 366.26 report states Carmen was arrested on February 14, 1995, and was incarcerated at the Northern California Women's Facility in Stockton. The report expressed the Department's recommendation that parental rights be terminated and that Precious be found adoptable by her foster parents.
Carmen was present on March 28 when the section 366.26 hearing commenced. Her counsel moved for a continuance and indicated she would file a section 388 motion to reopen family reunification. The hearing was then continued until April 10, 1995.
Carmen's section 388 petition was heard at the April 10 hearing. Carmen requested six additional months of family reunification services on the ground that she had been drug free since September 1994, but had been prevented by illness and lack of transportation from visiting Precious. She *Page 1472 
testified that she had completed a parenting class while incarcerated and had maintained contact with Precious's caretaker by writing approximately once a month. Carmen stated that she loved her daughter and requested another chance to work on reunification. The court denied Carmen's section 388 motion and terminated her parental rights.
A timely notice of appeal was filed on May 1, 1995. Carmen appealed from the section 366.26 termination of parental rights and the denial of her section 388 motion to reopen family reunification.
 III. DISCUSSION (1a) Carmen contends the judgment must be reversed because the Department failed to provide her with reasonable reunification services prior to terminating her parental rights.
A. The Reasonable Reunification Services Requirement (2) "Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.] Reunification services implement `the law's strong preference for maintaining the family relationships if at all possible.' [Citation.]" (Inre Elizabeth R. (1995) 35 Cal.App.4th 1774, 1787
[42 Cal.Rptr.2d 200].) Reunification services must be offered to an incarcerated parent "unless the court determines by clear and convincing evidence, those services would be detrimental to the minor." (§ 361.5, subd. (e)(1).) (1b) Here, the juvenile court did not find that reunification services would be detrimental to Precious. "Accordingly, when the court ordered a reunification plan for this mother and daughter, it was required to be a reasonable one." (In re Brittany S., supra,17 Cal.App.4th at p. 1406.)
(3) "In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (In re Misako R. (1991)2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].) "Section 361.5 has been construed, however, to require `[a] good faith effort' to provide reasonable services responding to the unique needs of each family. [Citation.] Moreover section 366.21, subdivision (g)(3), requires `clear and convincing evidence' that such services have been offered to the parents. Under this burden of proof, `evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind.' *Page 1473 
[Citation.]" (In re Monica C. (1995) 31 Cal.App.4th 296, 306
[36 Cal.Rptr.2d 910].)
(1c) Carmen challenges the juvenile court's findings, made at both the six-month and twelve-month hearings, that reasonable services were offered to her. She argues that (1) the reunification plan adopted by the juvenile court was not adequately tailored to this case and (2) the Department failed to facilitate visitation between Carmen and Precious, especially during the periods Carmen was incarcerated.
B. Scope of Review (4) The Department contends Carmen's objection to the adequacy of the reunification plan itself and to the finding that reasonable services were provided as of the six-month review are not timely. The Department reasons that the reunification plan was adopted at the dispositional hearing, and that the order resulting from that hearing was a final appealable judgment. The Department further contends that the six-month review order was appealable as an order after judgment. Thus, the Department asks that we limit our review to the question whether services rendered after the six-month review hearing were reasonable. To support this request, the Department cites In re Cicely L.
(1994) 28 Cal.App.4th 1697, 1704-1705 [34 Cal.Rptr.2d 345].
In Cicely L., a parent appealed from an order terminating his parental rights. (In re Cicely L., supra,28 Cal.App.4th at pp. 1704-1705.) Division Two of the Fourth District held that the juvenile court's orders finding that reasonable reunification services had been provided and terminating reunification services were appealable orders and that the parent failed to appeal from those orders, which had become final and were not subject to question on appeal from a subsequent order terminating his parental rights. (Id. at p. 1699.)
Cicely L. is procedurally unique in that the juvenile court there found that reasonable services were provided and ordered termination of those services several months before it set the section 366.26 hearing. Thus, the court reasoned that the order terminating reunification services, and the findings upon which that order was based, could have been appealed separately from and much earlier than the order setting the section 366.26 hearing. In contrast, in the present case the juvenile court terminated reunification services at the same hearing at which it set a section 366.26 hearing. As the Cicely L. court acknowledged, in this "typical" situation, the order terminating reunification services is not immediately appealable but may be challenged on the appeal from the final order entered at the conclusion of the *Page 1474 
section 366.26 hearing. (In re Cicely L., supra,28 Cal.App.4th at p. 1705, citing In re Matthew C. (1993) 6 Cal.4th 386,401 [24 Cal.Rptr.2d 765, 862 P.2d 765].) In In re MatthewC., our Supreme Court clarified that review of an order terminating reunification services encompasses a review of the findings which resulted in that order. (In re Matthew C.,supra, 6 Cal.4th 386.)[6]
The Department is correct that some courts have held that the order entered after a dispositional hearing which adopts the reunification plan is a final judgment and that any subsequent order is usually appealable as an order after judgment. (See Inre Cicely L., supra, 28 Cal.App.4th at p. 1704, and cases cited therein.) However, our Supreme Court did not adopt this view and implied instead that the order terminating parental rights isthe final judgment. (In re Matthew C., supra,6 Cal.4th at p. 396, fn. 8.) In any event, Matthew C. clearly holds that when the order terminating reunification services is made at the same time as the order setting the section 366.26 hearing, both ordersand the findings which resulted in those orders are reviewable on appeal from the final order terminating parental rights. (Inre Matthew C., supra, 6 Cal.4th at p. 401; see also In reBrittany S., supra, 17 Cal.App.4th at p. 1404; Code Civ. Proc., § 906[7])
C. The Reunification Plan (1d) Carmen contends the service plan was inadequate because it did not address Carmen's substance abuse problem or provide any services designed to facilitate reunification during the period of Carmen's incarceration. (5) When reunification services are ordered, the reunification plan "must be specifically tailored to fit the circumstances of each family [citation], and must be designed to eliminate those conditions which led to the juvenile court's jurisdictional finding." (Inre Dino E. (1992) 6 Cal.App.4th 1768, 1777 [8 Cal.Rptr.2d 416] .) "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintainedreasonable contact with the parents during the course of the service plan, and made reasonable *Page 1475 
efforts to assist the parents in areas where compliance proved difficult. . . ." (In re Riva M. (1991) 235 Cal.App.3d 403,414 [286 Cal.Rptr. 592].)
 1. Substance Abuse (1e) Carmen complains because the plan did not address her substance abuse problem. (6) "Since the focus of reunification services is to remedy those problems which led to the removal of the children, a reunification plan formulated to correct certain parental deficiencies need not necessarily address other types of conduct, equally deleterious to the well-being of a child but which had not arisen at the time the original plan was formulated." (In re Michael S. (1987) 188 Cal.App.3d 1448,1464-1465 [234 Cal.Rptr. 84].) (1f) There is nothing in this record to suggest that substance abuse should have been addressed in the service plan.
Drug addiction was not a condition which led to or played any part in the juvenile court's exercise of jurisdiction over Precious. Carmen's criminal history did not involve drugs, and Precious was not born with any drug related problems. Indeed, Carmen denied having a substance abuse problem early in these proceedings and did not admit that she had such a problem until she filed her petition to reopen family reunification in April of 1995. Thus, we do not think the service plan was deficient because it did not provide drug rehabilitation services to a mother who claimed not to have a drug problem.
 2. Services During Incarceration (7) Carmen contends the plan was not sufficiently tailored to her case because, aside from visitation, it did not provide her with any services during the period of incarceration. The Department recognized early on in this case that "frequent arrests and convictions can prevent [a mother] from providing the stability and continued care a small child needs." Despite this observation, the reunification plan did not acknowledge or address the problem which led to the juvenile court's exercise of jurisdiction over Precious, i.e., Carmen's habit of engaging in petty thefts.
Although the services to which an incarcerated parent is entitled are not spelled out in the statute, section 361.5, subdivision (e)(1)(D) expressly provides that "[a]n incarcerated parent may be required to attend counseling, parenting classes, or vocational training programs as part of the service plan if these programs are available." It seems obvious that Carmen could have benefited from both counseling and vocational training directed at providing her with the social and practical skills she would need to turn her life around *Page 1476 
and become a law-abiding parent. There is no indication in this record that the Department considered these or any other option designed to address the specific problem that led to the juvenile court's exercise of jurisdiction over Precious.
Having expressed our doubts about the adequacy of this plan, we nevertheless find that, under the particular circumstances of this case, Carmen has waived her right to complain by consenting to the terms of the plan. (In re Cody W. (1994) 31 Cal.App.4th 221
[36 Cal.Rptr.2d 848]; see also In re Kevin S. (1996)41 Cal.App.4th 882, 885-886 [48 Cal.Rptr.2d 763], and authority cited therein.) The transcript of the dispositional hearing reveals that this "bare-bones" plan was adopted at the urging of Carmen's counsel and was consented to by all of the parties involved. Thus, for example, Carmen's counsel stated: "[T]his is a (g) case. The baby was not born drug exposed. There's — there's nothing in the record to indicate that there's anything wrong with [Carmen's] parenting except that she's in custody and she didn't have any relatives. So I anticipate that as soon as she's released and has a place to stay, this child will be returned to her. [¶] And I talked to Ms. Pottier and she basically doesn't have a problem with that, but I would like the Court to assure [Carmen] that — that when she's released and she has a suitable place to live, this child will be returned to her since that's basically what would have happened had she had a relative to care for the child."
The formulation of the plan and its adoption by the juvenile court were both based on the assumption — urged by Carmen herself — that Carmen would have been out of custody before the next review date. Indeed, the juvenile court noted that Precious could possibly be returned to Carmen before the next hearing date. Of course this did not happen because Carmen was unable to keep herself out of jail. Nevertheless, the terms of the reunification plan were consistent with Carmen's wishes as expressed by her counsel at the dispositional hearing. Having consented to the plan, Carmen cannot now complain.
D. An Incarcerated Parent's Right to Visitation (1g) Carmen contends she did not receive reasonable services because the Department failed to facilitate visitation during the periods she was incarcerated, citing In re Brittany S., supra,17 Cal.App.4th 1399 and In re Monica C., supra, 31 Cal.App.4th 296. In Brittany S., the court found reunification services inadequate when the Department failed to facilitate visitation with a mother who was incarcerated less than 40 miles from her daughter. The court reasoned that, when a young child is involved, limiting *Page 1477 
contact to letters and telephone calls should be a last resort which might be appropriate only where the parent is incarcerated some distance away from the minor. (In re Brittany S., supra,17 Cal.App.4th at p. 1407 fn. 8.) Following Brittany S.,
Division One of this court held that reunification services were inadequate when they did not provide visitation for a mother incarcerated at a not "excessively distant" location. (In reMonica C., supra, 31 Cal.App.4th at p. 307.)
In contrast to Brittany S. and Monica C., the reunification plan in the present case specifically provided for visitation during the period of Carmen's incarceration. And there is no question on appeal that the juvenile court ordered visitation. The plan contains the requirement that Carmen "must visit the minor on a schedule set up by the Social Services Department."[8] At the hearing during which this requirement was adopted, the juvenile court made the following very specific reference to the Brittany S. decision: "I'm mindful of the Brittany S. recent decision in the Daily Journal DAR, August 17, '93, where an Appellate Court sort of beat up on a department in a Juvenile Court for its treatment of visitation or, in that case, lack of visitation with an incarcerated parent. [¶] So I want to make sure that we — we don't set ourselves up here where we move the — the child away from the prison so that we can then — so we would have to find that visitation is unworkable, and thus the only visitation would be indirect." The juvenile court then obtained express assurances from the Department that visitation would occur. Indeed, visitation was the central focus of the dispositional hearing and was identified by everyone as a top priority. Subsequently, at the six-month review hearing, the court specifically ordered the Department to arrange one-hour visits every two weeks.
Unfortunately, the juvenile court's efforts to prevent the Department from repeating the errors that required reversal inBrittany S. were to no avail. We find no evidence in this record that the Department arranged even a single meeting
between Carmen and her daughter. The Department contends the record is silent on this point because Carmen did not raise the subject below and opines that Carmen may have waived her right to visitation while she was incarcerated. This is clearly incorrect; Carmen made her desire for *Page 1478 
visitation abundantly clear at the dispositional hearing and was assured by both the Department and the court that visitation would occur. Further the Department, not Carmen, had the obligation to make a record at the six-month and twelve-month review hearings establishing that reasonable services were provided.
The Department implicitly concedes that it did not facilitate visitation in this case by refusing to acknowledge responsibility for providing such a service. In its view, "[v]isitation was not frustrated by the Department. It was frustrated by mother's incarceration, parole violation, and failure to contact the Department about visitation." But, "incarcerated parents . . . suffer obvious obstacles to visitation. Nevertheless the law is clear that reasonable services, most particularly visitation, must be provided." (In re Elizabeth R., supra,35 Cal.App.4th at p. 1791.) It was Carmen's incarceration which necessitated her reliance on the Department to facilitate the visitation to which she was unquestionably entitled, and the record is clear that Carmen made herself available to the Department during periods she was incarcerated.
The Department ignores that the plan itself provided that the Department, not Carmen, was responsible for scheduling visits. Notwithstanding this provision, and the juvenile court's clear instruction that Carmen's incarceration in a different county was not to impede that visitation, the social worker handling this case never indicated in any report that she scheduled orarranged a single visit between Carmen and her daughter. Indeed there is no evidence any visit occurred during periods Carmen was incarcerated.[9]
In her 12-month review report, the social worker faults Carmen for the Department's failure to facilitate visitation. The report states, in part: "7) Minor's mother must visit the minor on a schedule set up by the Social Service Department. [¶] [Carmen] has not complied with this requirement. [Carmen] asked the social worker about starting visitation at the Rectory at our meeting on January 21, 1994. I agreed that weekend visitations at the Rectory was an appropriate start. Since [Carmen] left her program and is now incarcerated, visitation will not be possible."
The social worker's conclusion that Carmen did not comply with the visitation requirement is simply not supportable in light of the undeniable fact that the Department never set up a visitation schedule with which *Page 1479 
Carmen could have complied. Further, the 12-month report recited the visitation requirement as it was stated in the original plan. At the six-month review, the court revised that visitation requirement and ordered the Department to facilitate visits "twice monthly for one hour." That order was made after Carmen left the Rectory and was back in custody. Thus, the social worker's conclusion that visitation would not be possible because Carmen was incarcerated was not only wrong, but in direct conflict with the court's order at the six-month review.[10]
The Department focuses on evidence that Carmen did not visit Precious or maintain contact with the Department between September 1994 and February 1995, the second period during these proceedings when Carmen was not incarcerated. Carmen's conduct while she was out of custody does not excuse the Department from doing its job, i.e., from providing reasonable reunification services to an incarcerated parent. (Cf. Robin V. v. SuperiorCourt (1995) 33 Cal.App.4th 1158, 1166-1167 [39 Cal.Rptr.2d 743] .) Further, the Department ignores the potential impact on Carmen of the Department's failure to do that job. If the Department had facilitated visitation as it was ordered to do, especially during the first several months of Precious's life, the relationship that Carmen could have developed with her daughter may have provided the motivation she needed to get out and stay out of jail. As Division One of this court has previously recognized: "Section 366.26, subdivision (c)(1)(A), contemplates that the court will review the record of visitation before terminating parental rights. The termination may be denied if the parent has `maintained regular visitation and . . . the child would benefit from continuing the relationship. . . .' (See also Cal. Rules of Court, rule 1463(d)(1)(B)(i).) [¶] The absence of visitation will not only prejudice a parent's interests at a section 366.26 hearing but may `virtually assure the erosion (and termination) of any meaningful relationship' between mother and child. [Citation.]" (In re Monica C., supra,31 Cal.App.4th at p. 307.)
In Monica C., the department arranged three visits for an incarcerated parent but the court concluded that the reunification plan was "unreasonable to the extent it failed to plan for a continuing series of visitations." (In re Monica C.,supra, 31 Cal.App.4th at p. 307.) In the present case, the record *Page 1480 
contains no evidence that the Department facilitated even a single visit during the several months that Carmen was incarcerated. Nor did it establish a visitation schedule despite several court orders directing it to do so. In short, there is no substantial evidence to support the juvenile court's finding, pursuant to section 366.21, subdivision (g)(3), that reasonable services were afforded to Carmen.[11]
"Where the juvenile court finds at the 12-month review hearing that reasonable services have not been provided, it is required by section 366.21, subdivision (g)(1) to hold an 18-month hearing in 6 months: `The court shall continue the case only if it finds . . . that reasonable services have not been provided to the parent or guardian.' On remand, the juvenile court can conform most closely with this statutory scheme by ordering reunification services and setting a final review hearing under section 366.22 in six months' time. (§ 366.22.)" (In re Monica C., supra,31 Cal.App.4th at pp. 310-311.)
 IV. DISPOSITION
The judgment terminating parental rights is reversed. The juvenile court is ordered to direct the Department to develop a reunification plan consistent with the views expressed in this opinion.
Kline, P.J., and Smith, J., concurred.
[1] All further code citations are to the Welfare and Institutions Code unless otherwise noted.
Section 300, subdivision (g) provides that a minor comes within the jurisdiction of the juvenile court if, among other things, "the minor's parent has been incarcerated or institutionalized and cannot arrange for the care of the minor."
[2] The plan which was originally proposed by the Department contained several boilerplate requirements which the Department acknowledged were not applicable to the circumstances of this case.
[3] There is no evidence in the record, nor does the Department here argue, that the Department scheduled the canceled visit. There is evidence that the foster parent brought Precious to the Rectory for a visit after the Department had been notified that Carmen left the program. This evidence suggests that the Department was not involved in scheduling visits during the period Carmen was at the Rectory.
[4] Carmen was transferred from the Alameda County jail to the Contra Costa County jail on July 13, 1994. On July 22, 1994, Carmen was sent to the Northern California Women's Facility in Stockton.
[5] At the hearing, Carmen's attorney filed a letter, dated November 11, 1994, which was mailed to Carmen at her last known address. In the letter, counsel noted that Carmen had failed to appear at two previous hearings, that the Department was recommending termination of parental rights and that counsel had requested a contested hearing to give Carmen time to recontact Precious and to communicate her wishes to counsel. Counsel asked Carmen to contact her immediately and stated she would seek to be removed as counsel if Carmen did not contact her before the December 2 contested hearing.
[6] The Legislature abrogated the Matthew C. holding by enacting section 366.26, subdivision (l)(1) which provides that an order setting a section 366.26 hearing may not be reviewed via appeal unless a timely writ petition has been filed. In reMatthew C. applies in this case, however, because the relevant orders were entered prior to January 1, 1995, the effective date of the new statutory requirement. (§ 366.26, subd. (l)(5).)
[7] Code of Civil Procedure section 906 provides, in part, that on appeal from a final judgment or postjudgment order "the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party. . . ."
[8] In a separate argument, Carmen attacks this specific requirement as an impermissible delegation of judicial power to the Department to determine visitation. "[A] visitation order granting the Department complete and total discretion to determine whether or not visitation occurs would be invalid." (In re Danielle W. (1989) 207 Cal.App.3d 1227, 1237
[255 Cal.Rptr. 344].) We reject Carmen's interpretation of the visitation requirement in this case as giving the Department "carte blanche to provide visitation totally at its discretion." Although we find the requirement is poorly and ambiguously worded, the transcript of the dispositional hearing confirms that the juvenile court did not give the Department total discretion but explicitly required that visitation be provided to Carmen.
[9] Our review of the record indicates that two visits occurred while Carmen was out of custody. Carmen went to see Precious at the foster parents' home on January 10, 1994, the day Carmen was released from prison. And the foster parent brought Precious to visit Carmen at the Rectory on January 13, 1994. The social worker did not take credit for arranging either meeting.
[10] The 12-month review report also discusses reunification requirements which were expressly not adopted by the court and faulted Carmen for failing to comply with some of those requirements. We are concerned not only by the Department's use, in the first instance, of apparently boilerplate reunification plans, but even more so by the apparent lack of communication between the caseworker responsible for effectuating the plan and the individual(s) who actually attend hearings on behalf of the Department. In the present case, this lack of communication resulted in the caseworker improperly evaluating Carmen pursuant to requirements the juvenile court never adopted.
[11] In light of this holding we need not determine whether Carmen was denied due process as a result of the Department's alleged failure to give her notice of the December 16, 1994, hearing at which her parental rights were terminated. We note, however, that while the Department maintains Carmen received notice, there is no evidence in the record that the Department complied with the mandatory notice requirements set forth in the statute. (See § 366.2, subd. (b).) *Page 1481