[No. F024855. Fifth Dist. Oct. 15, 1996.]

In re CHRISTOPHER H., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
GARY H., Defendant and Appellant.

**COUNSEL**

Bradley A. Bristow, under appointment by the Court of Appeal, for Defendant and Appellant.

Phillip S. Cronin, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**THAXTER, J.**—Gary H. appeals from the dispositional order declaring his child, Christopher H., to be a dependent of the juvenile court. (Welf. & Inst.

Code, § 300, subds. (b), (g).)[1] He challenges two components of the reunification plan: (1) an order that he submit to random drug or alcohol testing and (2) an order for "reasonable visitation" while he is incarcerated. He contends the first is inappropriate because the court found the allegation that his alcohol problems placed Christopher at risk not proven, and the second order amounts to an unlawful delegation of power to the department of social services (DSS) to set visitation. We will affirm.

## FACTS

Christopher H. was born prematurely on March 20, 1995. He weighed two pounds and had a cleft lip and palate; his mother died two weeks later. In September 1995, when Christopher was six months old and still hospitalized, the DSS filed a first amended petition under section 300, subdivisions (b) and (g). Count b-1 alleged Christopher was a high-risk baby who had been hospitalized since birth and would require extensive medical care when released from the hospital. Appellant had failed to visit the child, to cooperate with medical staff, to obtain the training necessary to care for Christopher, and to prepare his home for the child's basic needs. Count b-2 alleged appellant had alcohol-related problems that negatively affected his ability to care for, supervise and protect Christopher as he had been arrested for driving under the influence of alcohol on July 11, 1995. Count g-1 alleged appellant was incarcerated in Wasco State Prison and was therefore unable to care for Christopher.

The court conducted a combined jurisdictional and dispositional hearing on November 1, 1995. Appellant was not present, having refused transportation from prison for the hearings. His attorney argued there was insufficient evidence to support a finding that appellant's alcohol problems constituted a risk for Christopher. When appellant was arrested for driving under the influence, Christopher was in the hospital so appellant's behavior could not have placed him at risk.

The court found allegations b-1 and g-1 true but found allegation b-2 not proven. The court then adjudged Christopher a dependent, removed him from appellant's custody, and ordered that reunification services be offered to appellant. The court ordered appellant, among other things, to undergo a substance abuse evaluation, to participate in any recommended treatment, and to submit to random drug or alcohol testing. When appellant's counsel objected to the testing condition as unsupported by the jurisdictional findings, the court explained, "I make that order, although, I did not sustain the

---

[1]Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

(b)(2) [*sic*] allegation. I am satisfied that there was a substance abuse issue. That that allegation that [*sic*] is true, although the jurisdictional basis was not proven."

The court ordered that appellant have "reasonable supervised visits" with Christopher and gave DSS discretion to go to unsupervised visits upon four days' prior notice to Christopher's counsel when appellant was participating in the recommended parenting and reunification program.

## DISCUSSION

1. *The court did not abuse its discretion by ordering that appellant submit to drug or alcohol testing pursuant to the reunification plan.*

■ Appellant contends the drug or alcohol testing condition imposed was beyond the jurisdiction of the court since it found the allegation that his alcohol related problems negatively affected his ability to care for Christopher to be not proven. In addition, he contends, "[e]ven the fact that a person *is* a regular abuser of alcohol, alone, is not enough to justify jurisdiction, much less a reunification condition. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52 [156 Cal.Rptr. 262].)" The contentions are without merit.

■ At the dispositional hearing, the juvenile court must order child welfare services for the minor and the minor's parents to facilitate reunification of the family. (§ 361.5, subd. (a); Cal. Rules of Court, rule 1456(f)(1).) The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104 [254 Cal.Rptr. 364]; *In re Eric B.* (1987) 189 Cal.App.3d 996, 1005 [235 Cal.Rptr. 22].) We cannot reverse the court's determination in this regard absent a clear abuse of discretion. (*Ibid.*)

■ The reunification plan " 'must be appropriate for each family and be based on the unique facts relating to that family.' " (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1458 [234 Cal.Rptr. 84].) Section 362, subdivision (c) states in pertinent part: "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300." (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 172 [5 Cal.Rptr.2d 450].) The department must offer services designed to remedy the problems leading

to the loss of custody. (*Robin V.* v. *Superior Court* (1995) 33 Cal.App.4th 1158, 1165 [39 Cal.Rptr.2d 743].)

In *Basilio T.*, the court reversed an order that included a substance abuse component in the reunification plan because there was no evidence the parents had a substance abuse problem. The court explained, "Other than the social worker's observation that [mother] behaved somewhat out of the usual and was obsessed with discussing a fortune-making invention, there was nothing in the record to indicate either [parent] had a substance abuse problem. Given the offer of proof by [mother]'s counsel that there was indeed an invention that had a potential money-making aspect, the only remaining factor supporting the substance abuse component was [mother]'s behavior. On this record, [mother]'s behavior, by itself, cannot support a conclusion she had a substance abuse problem. Similarly, there is nothing in this record to indicate that a substance abuse problem led to the conditions that caused the dependency." (4 Cal.App.4th at pp. 172-173.) The court added, if a substance abuse problem was discovered during the pendency of the case, the trial court could modify the plan accordingly. (*In re Basilio T.*, *supra*, at p. 173, fn. 9.)

 Appellant's situation is distinguishable because the record demonstrates he has a substance abuse problem. In July 1995 he was arrested for driving under the influence after he was involved in an automobile accident which injured the adult passenger in his car. He told the investigating officer he had consumed four 22-ounce beers. Appellant's blood-alcohol level was 0.08 percent and his blood "abuse screen" was positive for methamphetamine. In addition, appellant had two prior arrests for driving under the influence of alcohol in 1991 and 1993, and his current incarceration apparently stemmed from the 1995 driving under the influence offense.

Appellant's substance abuse problems pose a potential risk of interfering with his ability to make a home for and care for Christopher. Unlike the situation in *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60-61 [156 Cal.Rptr. 262], on which appellant relies, the record does not indicate there are other adult relatives in appellant's home who can care for Christopher. If appellant does not discontinue his drug use and excessive alcohol consumption, his chances of regaining custody of Christopher are poor. Christopher, a high-risk infant with ongoing medical problems, presents a challenge for his caretaker. The social study of November 1, 1995, reported Christopher occasionally required oxygen at night and his feedings were difficult—it took up to an hour to feed him a six-ounce bottle. In addition, he was scheduled to begin the surgical procedures to repair his cleft lip and palate. Christopher requires a stable, sober caregiver.

" '[A] reunification plan formulated to correct certain parental deficiencies need not *necessarily* address other types of conduct, equally deleterious to the well-being of a child, but which had not arisen at the time the original plan was formulated.' " (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1475 [50 Cal.Rptr.2d 385].) However, when the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan. In this case, given appellant's repeated driving under the influence convictions and positive blood test for methamphetamine, the court would have been remiss if it failed to address appellant's substance abuse even though that problem had not yet affected his ability to care for Christopher. The court reasonably concluded appellant's substance abuse was an obstacle to reunification that had to be addressed in the reunification plan. (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 254 [271 Cal.Rptr. 629] [plan should serve to put parent on notice as to what must be accomplished to reunite the family].)

Random drug or alcohol testing will facilitate appellant's compliance with the remainder of the reunification plan. The possibility of random drug tests should provide an added incentive for appellant to avoid illicit drugs and excessive alcohol consumption, either of which will interfere with his ability to provide a suitable home for Christopher and achieve reunification. Accordingly, the court did not abuse its discretion in ordering random drug or alcohol testing as part of the reunification plan.

2. *The court's order of "reasonable" visitation during appellant's incarceration did not constitute an unlawful delegation of the power to set visitation to the DSS.*

Appellant contends the court's order that he have "reasonable" supervised visits with Christopher constituted an improper delegation to the DSS of the court's power to determine his right to visitation. He reasons, because the order does not state whether prison visits are acceptable, DSS, "not having any guidance as to [what is] 'reasonable,' may just determine that a visit while appellant is in prison" is undesirable. "In such a situation, [DSS], not the court determines the right to visit."

Every order placing a minor in foster care and ordering reunification services must provide for visitation between the parent and the minor as frequently as possible, consistent with the well-being of the minor. (§ 362.1, subd. (a).) The court may deny a parent visitation only if visitation would be harmful to the child's emotional well-being. (*In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 838-839 [269 Cal.Rptr. 624].) The juvenile court has the

sole power to determine whether visitation will occur and may not delegate its power to grant or deny visitation to the DSS. The court may, however, delegate discretion to determine the time, place and manner of the visits. Only when the court delegates the discretion to determine whether any visitation will occur does the court improperly delegate its authority and violate the separation of powers doctrine. (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374 [28 Cal.Rptr.2d 705]; *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237 [255 Cal.Rptr. 344] [order for "Visitation in the discretion of DPSS and minors" was not improper delegation of judicial powers].)

In this case, the juvenile court did not delegate to the DSS complete discretion to determine whether any visitation should occur. The court adopted the DSS social worker's recommendation of "reasonable visits" between Christopher and appellant. While the order is "bare bones," it constitutes a determination that visitation between Christopher and appellant should occur. Further, DSS's role in managing the details of "reasonable" visitation is limited and subject to the juvenile court's supervision and control over its exercise (§ 388). Thus, the juvenile court did not abdicate its statutory duty to determine appellant's visitation with Christopher by ordering "reasonable" visitation. (Cf. *In re Moriah T., supra*, 23 Cal.App.4th at p. 1375.)

Despite dictum to the contrary in *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757 [270 Cal.Rptr. 326], most courts, including ours (see, e.g., *In re Albert B.* (1989) 215 Cal.App.3d 361, 384-385 [263 Cal.Rptr. 694]), agree the visitation order need not specify the frequency and length of visits. Such specificity is at odds with the purposes and practical necessities of a visitation order intended to protect the well-being of a dependent child while both maintaining ties between the child and parent and providing the parent with an opportunity to demonstrate why his right to custody and care of the child should be reestablished. (*In re Moriah T., supra*, 23 Cal.App.4th at p. 1375.)

A juvenile court relies on the county agency to manage each dependency case and to provide the court with information on the family's progress and the well-being of the child. Because the period of juvenile court jurisdiction is designed to be relatively brief, the effectiveness of a family plan, including visitation, depends on the resources and flexibility of the agency charged with its implementation and supervision. Requiring a disposition order to specify frequency and length of visitation compromises the ability of the county agency to fulfill its statutory mandate to supervise each case in a manner consistent with the child's best interests. (*In re Moriah T., supra*, 23 Cal.App.4th at p. 1377.)

The court's order of "reasonable" visitation was appropriate under the circumstances. Christopher was a seven-and-one-half-month-old baby with significant health problems who was scheduled to begin a series of surgeries necessary to repair his cleft lip and palate. Visitation, particularly while appellant is incarcerated in Wasco, will have to be scheduled around Christopher's medical care and health status. What constitutes "reasonable" visitation in light of appellant's need for contact with Christopher and Christopher's best interests will vary.

Moreover, the order for "reasonable" visitation must be read in light of statutory mandates prescribing visitation between parent and child "as frequent as possible, consistent with the well-being of the minor" (§ 362.1, subd. (a)) and visitation between the incarcerated parent and his or her child "where appropriate" (§ 361.5, subd. (e)(1)(C)). The order must also be read in light of case law reiterating that visitation must be provided to the incarcerated parent. (*In re Precious J.*, *supra*, 42 Cal.App.4th at p. 1478; *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1791 [42 Cal.Rptr.2d 200]; *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1406-1407 [22 Cal.Rptr.2d 50].) Under these mandates, the DSS cannot arbitrarily determine that visitation between appellant and Christopher during appellant's incarceration is "unreasonable" or not acceptable.

The role of the DSS and its agents in dependency proceedings is subject to the juvenile court's supervision and control. If the agency is abusing its responsibility in managing the details of visitation, appellant may bring that matter to the attention of the juvenile court by way of a section 388 petition to modify the visitation order. (*In re Moriah T.*, *supra*, 23 Cal.App.4th at p. 1377.)

The holding of *In re Shawna M.* does not compel a different result. There the court concluded an order that supervised visitation be permitted as " 'arranged through, and approved by,' " the county human services agency was an improper delegation of judicial authority. After several traumatic events in her life, including sexual abuse and being taken into protective custody, eight-year-old Shawna was suffering from post-traumatic stress syndrome. At the dispositional hearing, the court asked the social worker how much time Shawna's mother was going to spend with Shawna. The social worker told the court that the psychiatrist treating Shawna wanted to " 'work with the mother in conjunction with the child as often as possible, and she will gauge Shawna's emotional condition and reaction to the visits so she'll know better how often to plan it based on how Shawna reacts.' " (*In*

*re Shawna M.* (1993) 19 Cal.App.4th 1686, 1688-1689 [24 Cal.Rptr.2d 126].)

When the mother's counsel persisted and asked how frequent that visitation would be, the social worker responded that " 'It will have to be coordinated with the therapist. And I feel that we need to have that liberty to adjust it with her, because Shawna's condition can—she can become overwhelmed, and we may have to reduce the number of visits until she can manage better.' " (*In re Shawna M., supra*, 19 Cal.App.4th at p. 1689.) The court concluded the psychiatrist was most able to determine what should be done in Shawna's best interests and adopted the agency's recommendation regarding visitation as "arranged through, and approved by," the agency. (*Id.* at p. 1690.)

The appellate court concluded that order was an improper delegation of judicial authority. (*In re Shawna M., supra*, 19 Cal.App.4th at p. 1690.) It was apparent from the record that in adopting the recommended visitation order, the juvenile court was appropriately attempting to balance the mother's interest in visiting Shawna with Shawna's best interests—that visitation not proceed at the expense of Shawna's emotional well-being. The court's order, however, failed to give the agency any guidance as to when, how often, and under what circumstances visitation was to occur. It did not specify, for example, that the frequency of visitation should be determined in consultation with the treating psychiatrist. Had such a specific condition been part of the order, it might have been valid. As it stood, however, it granted too much discretion to the agency, and was therefore an invalid order. (*Id.* at pp. 1690-1691.)

The standardless *Shawna M.* order directing visitation as "approved by" the agency, permitted any visitation or no visitation so long as the agency approved the arrangement. To the contrary, the order for "reasonable" visitation in this case reflects the agency's statutory obligation to provide "reasonable" reunification services and limits the agency's discretion by a standard of reasonableness based on the needs of the particular family unit. For example, in *In re Elizabeth R., supra*, the court noted that visitation where a parent is incarcerated "may or may not be reasonable depending on the rules and regulations of the institutions involved, the condition of the parent, and the distance from the children's placement." (35 Cal.App.4th at p. 1792.) Accordingly, the order for "reasonable" visitation did not constitute an improper delegation of judicial authority to the DSS.

## DISPOSITION

Affirmed.

Ardaiz, P. J., and Buckley, J., concurred.