Filed 1/9/15  Guy S. v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GUY S.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU et al.,<br><br>    Real Parties in Interest. | A143324<br><br><br>(Contra Costa County Super. Ct. Case No. J13-01015) |

Guy S., C.S.'s biological father, petitions this court to set aside the juvenile court's October 8, 2014 order denying his motion under Welfare and Institutions Code section 388,[1] and setting a February 2, 2015 hearing pursuant to section 366.26. The section 388 motion sought to reverse an earlier order denying petitioner reunification services and visitation with C.S. For the reasons stated below, we deny the petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

C.S. will turn three years old in March 2015. When she was born, petitioner was incarcerated. He remained incarcerated on September 4, 2013, when the Contra Costa

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

1

County Social Services Bureau (agency) filed a petition, pursuant to section 300, subdivision (b), alleging that C.S. was at risk of harm due to her mother's substance abuse and the mother's having left her with a caregiver for four days with no provisions for on-going support or any indication of when she would return. The section 300 petition contained no allegations regarding C.S.'s father.

After ordering that C.S. be detained on September 5, 2013, the juvenile court sustained the allegations of the section 300 petition on September 26 and declared the child a dependent of the court.

On November 26, 2013, the caseworker informed the court that petitioner anticipated being released from custody on January 20, 2014, and that he requested family reunification services. On January 29, petitioner appeared in court and the court ordered a paternity test.[2] It also requested information about his criminal history and his prior involvement with C.S.

Petitioner's criminal history began in 1986, when the California Youth Authority asserted jurisdiction over him after he committed a burglary. During his incarceration by the Youth Authority, he escaped from a juvenile facility. The Youth Authority maintained jurisdiction over him until he was 20 years old. In 1991 he was sentenced to two years in state prison for first degree burglary. In 1993, 1994 and 1995, he was returned to prison for parole violations. In September 1995, he was convicted of being a felon in possession of a firearm and sentenced to 32 months in state prison. In 1997, he was again convicted of being a felon in possession of a firearm and possessing a prohibited weapon and sentenced to prison for four years. In 1998, 2000, 2001, 2002 and 2003, he was returned to prison for parole violations. In 2004, he was convicted of being in possession of drugs while armed, possession of a prohibited weapon, and possession of a controlled substance and was sentenced to four years in prison. In 2011, he was sentenced to five years in state prison after being convicted of automobile theft, possession of controlled substances, possession of stolen property, being a felon in

_____

[2] No father was listed on C.S.'s birth certificate. The mother reported that petitioner did not have a relationship with the child.

2

possession of a firearm, resisting police, trespassing, evading police, and being in possession of forbidden ammunition.

On February 13, 2014, the juvenile court requested that the agency recommend whether services should be provided to petitioner if his status were raised to that of a presumed father.[3] In a February 27, 2014 memorandum, the agency explained that it did not yet know whether petitioner was the biological father. It opined, however, that he did not meet the criteria to be a presumed father. His only contact with C.S. was visitation while he was incarcerated and he had never received her into his home. The memorandum continued that even if testing confirmed petitioner is the biological father, reunification services would be discretionary. It cited his lack of a relationship with C.S., his extensive criminal history, and the fact that he had been incarcerated during the child's "entire life," having just recently been released. Consequently, the agency believed that it would not be in the child's best interests for reunification services to be provided to petitioner. At the March 3, 2014 disposition hearing, the court found by clear and convincing evidence that placing C.S. either with her mother or petitioner would be detrimental to her safety, protection or physical or emotional well-being. It ordered that reunification services not be provided to petitioner unless he was raised to presumed father status. Nothing in the record reflects that any party appealed the juvenile court's order at that time.

On April 7, 2014, the juvenile court received the results of the genetic testing, which confirmed that petitioner is C.S.'s biological father (the probability of paternity is 99.99 percent). On May 1, the court held a contested hearing concerning petitioner's request to be elevated to presumed father status, his request for visitation, and his request

---

[3] For clarity, we provide the following definitions: (1) A man who has assumed a parental role is a "de facto father." (2) A man who may be the biological father is an "alleged father." (3) A man who is established to be the biological father is the "natural father." (4) A man who has held the child out as his own and received the child into his home is a "presumed father." These categories may partially overlap—for example, a natural father may also be a presumed father. A presumed father alone is entitled to reunification services and custody of the child. (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801.)

for reunification services. The agency submitted a memorandum, "cautiously recommend[ing] services to" petitioner. In making its recommendation, the agency weighed various factors including petitioner's "incredible history of substance use and criminal activity associated with drug use," the fact that he had "been incarcerated the majority of [C.S.'s] life," his "consistent and regular[] contact" with his daughter—even while incarcerated, his efforts to arrange for his daughter's care when the mother was unable to care for her, his initiative in enrolling in a parent education course and in contacting the agency, and his expressed desire to provide for his daughter. The report noted that the minor "is a young child who has experienced a tremendous amount of loss and is struggling emotionally." Her foster parents were in the process of enrolling her in a therapeutic preschool.

The juvenile court found that petitioner is C.S.'s biological father, but denied his request for presumed father status. It also declined to follow the agency's recommendation and denied his request for reunification services and did not order visitation. Although it advised petitioner orally of his right to appeal and the necessary steps to do so, no appeal was taken from that order.

In its September 3, 2014 review hearing report discussing both C.S. and her half-sister, the agency recommended that services to the mother be terminated and that a hearing, pursuant to section 366.26, be held to determine a permanent plan. The agency reported that C.S. had developed a trusting relationship with her foster parents, calling them "mama," and "daddy." When her older half-sister was present, C.S. sought her constant attention. The foster parents were willing and able to provide the girls with permanence.

On or about October 6, 2014, petitioner presented the juvenile court with a section 388 motion seeking to have the court reverse its earlier order and elevate him to presumed father status, order visitation, and order that he be provided with reunification services. At the October 8 contested hearing on the section 388 motion and the six- and 12-month reviews, petitioner testified he had custody of and cared for a half-sibling of

4

C.S.[4] He wanted C.S. to be part of his family. He testified that he had been employed for the past five months, was in full compliance with the terms of his probation, and that all his drug tests had been negative. A letter from petitioner's probation officer verified that through the date of the letter, September 22, 2014, petitioner had complied with the terms of his probation "with no issues" and had passed all random drug tests.

C.S.'s counsel opposed the motion. She pointed out that at the time of the hearing C.S., who was not yet three years of age, had been detained for 13 months, was enjoying a stable placement in a home where she had developed a close relationship with her half-sister, and was bonded with her caregivers. Offering reunification services to petitioner would necessarily entail a significant delay in order to assess how his relationship with C.S. would develop, as C.S. was not attached to petitioner. Counsel argued that although reunification might be in petitioner's best interests, it was not in the child's best interests.

The juvenile court denied petitioner's section 388 motion. It ruled that there was not a sufficient change in circumstances to warrant reversing course. It found that offering services to petitioner "at this point in time would be detrimental to the child and not be in her best interest." It also found that C.S. "is in dire need of permanency." Given (1) petitioner's "extensive, uninterrupted criminal history," (2) "the fact that he doesn't have a relationship with this child, due mostly in part because he was incarcerated at the time that she was born and until the time he presented himself here in early 2014," and (3) "the fact that [C.S.] is doing very well," placed with her half-sister, which was important to her, the court denied the motion.

Petitioner filed a notice of intent to file a writ petition on October 15, 2014, and filed the petition on November 13. After issuance of an order to show cause, the agency filed its opposition. All parties have waived oral argument.

**DISCUSSION**

Petitioner contends the juvenile court abused its discretion by denying him visitation and reunification services due to his prior incarceration. He cites case law to

---

[4] This half-sibling is not the same child as the half-sibling being cared for by C.S.'s foster parents.

support the proposition that the parent-child relationship is critically important. (See e.g., *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 848, quoting *Lehr v. Robertson* (1983) 463 U.S. 248, 256; *In re Andrew L.* (2004) 122 Cal.App.4th 178, 195, quoting *In re Julia U.* (1998) 64 Cal.App.4th 532, 544.) In particular, he cites *In re Precious J.* (1996) 42 Cal.App.4th 1463, 1476-1478, for the proposition that although a parent's incarceration presents substantial obstacles to arranging visits, it is not by itself sufficient reason to deny visitation.

Petitioner's argument fails for two reasons. Factually, the court did not deny visitation or services solely or even primarily because petitioner had been incarcerated. Admittedly, petitioner's incarceration was a factor that led to his lack of a relationship with his daughter. However, the juvenile court also focused on his extensive criminal history, the child's need for permanence, her bond with her foster family, and her lack of a relationship with petitioner. Unlike the situation in *In re Precious J.,* where the issue was whether the agency had provided reasonable services when it failed to arrange for visitation while the parent was incarcerated, here visitation occurred during petitioner's incarceration. Nonetheless, his daughter did not have a significant relationship with him and she was developing a positive familial relationship with her new family, including her half-sibling. The court based its ruling on these facts, coupled with petitioner's extensive criminal history. Thus, the court's order was not based primarily on petitioner's prior incarceration.

Secondly, petitioner did not appeal the February 13, 2014 order denying him services unless he attained presumed father status, the March 3 order finding that placing C.S. with petitioner would be detrimental to her, or the May 1 order denying him presumed father status, visitation, and services. Under section 388, subdivision (d), the moving party bears the burden of proving that there is new evidence or changed circumstances indicating that a modified order is in the child's best interests. (*In re Andrew L., supra,* 122 Cal.App.4th at p. 190.) Although petitioner made a generalized claim that parent-child relationships are very important, he presented absolutely no evidence—much less new evidence—that it would be in the best interests of C.S. to visit

6

with him and for him to receive reunification services. Although he presents evidence that he has taken steps to become a responsible parent and to hold down a job, commendable as those steps may be he presents no evidence concerning the needs of C.S. or tending to show how she would be affected were he to play a parental role in her life.

The court's decision to deny the section 388 motion falls well within its sound discretion. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.) The determination of the child's best interests when ruling on a section 388 motion requires consideration of (1) the seriousness of the initial reason for the dependency, (2) the strength of the existing bond between the parent and the child, (3) the strength of the child's bond to the caretakers, and (4) the extent to which there has been a change of circumstances. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530-532.) Here, at the time of the initial dependency, petitioner was not a custodial parent and thus was unavailable to mitigate the problems with the mother's caretaking; he has a weak relationship with C.S.; C.S. has a solid, trusting relationship with the foster parents and her half-sister; and there has been only minimal changed circumstances. While petitioner has made positive strides at self-improvement, and has shown genuine affection for his daughter, on this record there is no basis to conclude that the juvenile court abused its discretion in finding that the child's best interests preclude the relief that he seeks.

## DISPOSITION

The petition for an extraordinary writ is denied. Because the section 366.26 hearing is set for February 2, 2015, our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

                                                    _____
                                                    Pollak, J.


We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.