Filed 9/9/14  In re A.Z. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re A.Z., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D065385 |
| Plaintiff and Respondent, | (Super. Ct. No. J518646A-B) |
| v. | |
| VERONICA Z., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

This appeal arises out of the juvenile court's order denying Veronica Z.'s request for additional reunification services with her children A.Z., born in 2007, and A.E., born in 2010 (together, the children). The children were removed from Veronica due to her drug use, and she was incarcerated due to her violation of probation. The children were placed with their paternal grandmother and the court ordered that reunification services be provided to Veronica. However, at the prison where Veronica was incarcerated there was no parenting education course and no individual therapy, and Veronica was not eligible for the drug treatment program. Thereafter, at the six-month review hearing the court terminated services to Veronica based on the fact that she would not be released from prison until after the 12-month cutoff date for services.

Veronica asserts that the court erred in terminating her case plan because reasonable reunification services were not provided to her while she was incarcerated. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts*

In May 2013 the juvenile court assumed jurisdiction over A.Z. and A.E. based on the San Diego County Health and Human Services Agency's (the Agency's) petition which alleged that Veronica abused methamphetamine, both children tested positive for methamphetamine upon their entry to Polinsky's Children's Center, drug paraphernalia was accessible to the children at the family's house, and the father was aware of Veronica's methamphetamine use but failed to protect the children. At the contested disposition hearing the court declared the children dependents of the juvenile court,

2

removed them from the parents, placed them in relative care, and provided reunification services for both parents. The children were placed with their paternal grandmother.

Veronica had a history of methamphetamine use of almost 15 years and had a history of drug treatment and relapse. Although she denied it to her social worker, Veronica told her probation officer that the father also used methamphetamine. The father denied methamphetamine use but admitted marijuana use for pain management. His criminal history included driving while under the influence, possession of controlled substances and drug paraphernalia, being a fugitive from justice, and domestic violence. In March 2013 he failed to drug test twice for the Agency.

At the time the children were detained, Veronica was on probation for burglary, possession of drug paraphernalia, and petty theft, and in February 2013 she tested positive for methamphetamine for her probation officer. In March her probation officer conducted a Fourth Amendment waiver search of her home. Officers found drug paraphernalia with residue, small baggies, a protractor, pocket knives, a scale, and a handmade urine device filled with urine commonly used by probationers who are trying to be deceptive when providing a sample. The children were present at the home.

Veronica had a child welfare history dating back to 2007, which included referrals for an older child. Her criminal history dated back to 1998, and included theft, possession of controlled substances and paraphernalia, being a registrant as a narcotics offender, burglary, theft of an elder over $400. In 2009 she was convicted of residential burglary for which she served time in jail. She was then placed on five years' formal probation. Her probation specified that she refrain from drug use, complete a 52-week

3

elder abuse course, complete 20 days of public service, report to probation as directed, complete outpatient or inpatient drug treatment depending on her probation officer's recommendation, and submit to drug testing.

Veronica enrolled in drug treatment, but tested positive for methamphetamine at her intake appointment. She then had excessive absences from treatment. Thereafter, while still in treatment, she tested positive for methamphetamine. She also failed to report to her probation officer as directed. She failed to enroll in the elder abuse course and failed to find employment or enroll in educational courses.

As a result of the March 2013 search Veronica was arrested for a violation of probation. On May 29 she was transferred to Central California Women's Facility (CCWF) in Chowchilla. Her release date at that time was calculated as approximately May 2015.

Based upon the length of Veronica's sentence and the fact she would not be able to complete significant portions of her case plan while incarcerated, the Agency filed a Welfare and Institutions Code[1] section 388 petition seeking to deny further services to Veronica. The court denied the Agency's request.

At the six-month review hearing, the Agency recommended that services be terminated for Veronica. Veronica sought continued reunification services and the matter was set for trial. At trial, the court received the Agency's reports into evidence. Counsel for Veronica did not cross-examine the social worker and did not present any evidence.

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

4

Following argument, the court terminated further reunification services as to Veronica, finding that she had "not made substantive progress with the provisions of the case plan."

DISCUSSION

Veronica asserts that the court erred in terminating services and refusing to extend the reunification period because the court-ordered services were not available to her in prison. This contention is unavailing.

A. *Background*

On May 29, 2013,[2] after she was sentenced, Veronica was transferred from Las Colinas Women's Detention Facility in San Diego to CCWF. On June 5 social worker Rosa Hueso contacted the director of inmate programs at CCWF, Bill Parker, to discuss the services offered at CCWF that were compatible with those required by Veronica's case plan. Parker indicated CCWF offered parenting education that was compatible. CCWF also offered a drug treatment program, but not drug testing. Drug testing was only conducted if drug use was suspected. Individual therapy was not offered but CCWF did provide acute mental health and psychiatric services.

Hueso thereafter discussed the case with Veronica's CCWF counselor, a Mr. Savage, to determine if case plan services could be offered to her while she was incarcerated at CCWF. Savage reported that on June 5 she remained in "Reception," meaning she had not been released to the general population. Savage indicated that even

---

2    All further dates are to the calendar year 2013.

once Veronica was moved to the general population, there was no guarantee she would begin services as there were many waiting lists. Also, while in Reception she could not receive any phone calls, including from a social worker. After her release from Reception she would be assigned a new counselor and Hueso would have to contact that new counselor to inquire about setting up a phone card for the mother.

On August 26 a newly assigned social worker, Vilma Martinez, contacted Veronica's correctional counselor, Dean Dew, to discuss the possibility of her release to house arrest. Dew indicated that she had not applied for that program. On September 4 Martinez contacted Dew for an update. He indicated Veronica had still not applied for house arrest. He also indicated that given her serious felony, she likely was not eligible. He also indicated that Veronica was not in a drug treatment program but was attending school and was on a waitlist for a job.

On August 26 Martinez also left a message for Parker, but did not receive a call back. Martinez also obtained the phone number for the litigation coordinator at CCWF and passed that on to Veronica's attorney. Martinez also wrote to Veronica, detailing the reasons the Agency was recommending the court terminate reunification services.

On September 9 a section 388 trial was held, wherein the Agency recommended the court deny Veronica further services. Veronica objected and her counsel informed the court that because she was no longer in Reception, she had the ability to participate in services available at CCWF that were appropriate to her case plan. Counsel described the parenting course and drug treatment program available to her. Counsel told the court Veronica was ready, willing, and able to participate in services. The court asked why

6

Veronica was not in a drug treatment program. Counsel could not explain why but indicated she was willing to engage in drug treatment. Based in part on Veronica's argument that she was willing to participate in drug treatment, the court denied the Agency's request to terminate services.

Thereafter, Martinez e-mailed Dew with questions regarding services provided at CCWF and Veronica's participation in services. On October 23, Dew responded. He indicated the only course Veronica was participating in was computer literacy to which she had been assigned. He indicated she was not eligible for drug treatment, but could participate in Narcotics Anonymous or Alcoholics Anonymous groups. He also indicated he had not placed her in a parenting class because it was not formally offered. He also confirmed she was not eligible for house arrest and that she was discipline free. Martinez also provided Veronica with a copy of her case plan. She also attempted to contact Dew further, but without success.

B. *Analysis*

1. *Forfeiture*

The Agency asserts that Veronica has forfeited her claim that the Agency failed to provide reasonable services to her because she only requested continuing services and never asserted the services were not reasonable. This contention is unavailing.

At trial, counsel for Veronica complained that although there was a drug treatment program, she was not eligible, and that there was no formal parenting program or individual therapy. Thus, she has adequately preserved this issue.

7

2. *Merits*

"Whenever a minor is removed from parental custody, the juvenile court must, in the absence of certain specified exceptions, order the social worker to provide services to the parent for the purpose of facilitating reunification of the family." (*In re Jesse W.* (2007) 157 Cal.App.4th 49, 59, fn. omitted.) Reunification services for a parent of a dependent child under the age of three are generally limited to six months, but may be extended to the 12-month date. (§§ 361.5, subd. (a)(1)(B), 366.21, subd. (e).)

It is the Department's obligation at the six-month review hearing to make a record that reasonable services were provided. (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1478.) "The adequacy of the reunification plan and of the department's efforts to provide suitable services is judged according to the circumstances of the particular case." (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011.) We review a finding reasonable services were provided for substantial evidence, viewing the evidence in the light most favorable to the Department and indulging all reasonable inferences in favor of that determination. (*Precious J., supra,* 42 Cal.App.4th at p. 1472; accord, *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1158; *Mark N., supra,* 60 Cal.App.4th at p. 1010.) "When it appears at the six-month review hearing that a parent has not been afforded reasonable reunification services, the remedy is to extend the reunification period, and order continued services." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 973-974.)

Veronica focuses on the deficiencies in reunification services based upon the fact that she was incarcerated. She correctly notes that the juvenile court, in determining

whether court-ordered services should be extended, "shall consider the special circumstances of an incarcerated . . . parent . . . , including, but not limited to, barriers to the parent's . . . access to services and ability to maintain contact with his or her child." (§ 361.5, subd. (a)(3); see also § 366.21, subd. (e) [when determining at six-month review hearing whether return of child to parent would be detrimental, court shall consider particular barriers faced by incarcerated parents in accessing reunification services].)

Veronica asserts that the services provided to her at CCWF were not reasonable as at that facility "there was no parenting education program, no individual therapy, and Veronica was not eligible for the drug treatment program."

However, "the statutory provisions calling for special consideration do not suggest the incarcerated parent should be given a free pass on compliance with the service plan or visits. That there are barriers unique to incarcerated parents is but one of many factors the court must take into consideration when deciding how to proceed in the best interests of the dependent child." (*A.H. v. Superior Court* (2010) 182 Cal.App.4th 1050, 1060.) "Perfection" on the part of the incarcerated parent to complete the objectives of his or her treatment plan "is certainly not the standard, but a demonstrated lack of progress necessary for reunification, *regardless of its cause,* is absolutely relevant when the ultimate goal is expeditious resolution for the child." (*Id.* at p. 1062, italics added.)

The adequacy of a social services agency's efforts is "judged according to the circumstances of each case." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.) The record in this case shows that the Agency made reasonable efforts to provide reunification services to Veronica. (*Id.* at p. 1363.) The social worker repeatedly

9

inquired whether Veronica could receive services while incarcerated. Social services agencies are not jailors and they cannot be expected to challenge determinations made by prison officials to deny services. "[P]risons are run by the Department of Corrections, not the department of children's services." (*Ibid*.)

The Agency must "make '[a] good faith effort to develop and implement a family reunification plan.'" (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) "Reunification services need not be perfect. [Citation.] But they should be tailored to the specific needs of the particular family. [Citation.] Services will be found reasonable if the [Agency] has 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .'" (*In re Alvin R., supra,* 108 Cal.App.4th at pp. 972–973.)

In determining the sufficiency of reunification services, the role of the appellate court is to decide "whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) The standard is not that the best possible services were provided, but that reasonable services were provided under the circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

Veronica was provided with her case plan once she was housed at CCWF and she was therefore aware of the need for some type of drug treatment. While she was in Reception she did not have access to services, but CCWF counselor Savage provided her

10

with referrals to the services available once she was moved from Reception. The social workers assigned to this case diligently attempted to assess the services available to Veronica and what services she could participate in.

Moreover, as the court found, when Veronica was released and could show progress, she had the ability to seek a court order for services by way of a section 388 petition. When, as here, the juvenile court's findings are supported by the evidence, the California Supreme Court has held the escape mechanism of a section 388 petition upholds a parent's constitutional right to parent. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310; *In re Zacharia D.* (1993) 6 Cal.4th 435, 455.)

Further, the fact that the court continued services for the father is of no moment. At a six-month review hearing the juvenile court has the discretion to terminate services to one parent even if the other parent is receiving services. (*In re Jesse W., supra,* 157 Cal.App.4th at p. 58.) It was reasonable under the circumstances to discontinue Veronica's services so the social worker could focus limited resources on reunifying the children with the father. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 107.)

In sum, the court did not err in declining to continue reunification services to Veronica.

11

DISPOSITION

The order is affirmed.

                                                                        NARES, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.