Filed 2/18/21  T.W. v. Superior Court CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| T.W.,<br><br>     Petitioner,<br><br>          v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>     Respondent;<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY et al.,<br><br>     Real Parties in Interest. | G059668<br><br>(Super. Ct. No. 19DP0359)<br><br>O P I N I O N |

          Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Barry T. LaBarbera, Judge. (Retired judge of the San Luis Obispo Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Petition denied.

Law Offices of Arthur J. LaCilento and Arthur J. LaCilento for Petitioner.

No appearance for Respondent.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Law Office of Harold LaFlamme and Christopher Mastick for Real Party in Interest A.T.

No appearance for Real Party in Interest Ar.T.

\*     \*     \*

### INTRODUCTION

Petitioner T.W. (mother) is the mother of A.T. (the minor).  The minor, now two and one-half years of age, was taken into protective custody in April 2019.

By petition filed pursuant to rule 8.452 of the California Rules of Court, mother seeks relief from the juvenile court's order terminating reunification services and setting a hearing under Welfare and Institutions Code section 366.26 to consider a permanent plan and the termination of parental rights.  (Further statutory references are to the Welfare and Institutions Code.)  The section 366.26 hearing is scheduled for March 15, 2021.[1]

The juvenile court's findings that reasonable reunification services had been provided to mother were supported by substantial evidence.  We therefore deny the petition for writ of mandate or prohibition.

---

[1]  The minor submitted a letter brief joining SSA's brief in opposition to the petition for writ of mandate.

2

I.

*DETENTION, JURISDICTION, AND DISPOSITION*

In March 2019, the Orange County Social Services Agency (SSA) filed a dependency petition alleging that the minor was a dependent child of the juvenile court pursuant to section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling).[2] The petition, as amended, alleged mother had unresolved mental health issues, had lost custody of the minor's three older half siblings based on her physical and verbal abuse of those half siblings,[3] and had failed to participate in mental health services provided as part of the other dependency cases. The petition also alleged the minor's father, Ar.T. (father),[4] had a criminal history and an unresolved substance abuse problem. Mother was living in Utah at the time. The minor was detained and placed in the custody of the maternal grandmother in California.

In conversations with SSA leading up to the jurisdiction and disposition hearing, mother denied having mental health issues or unstable housing. However, the maternal grandmother advised SSA that mother had previous mental health problems, had been diagnosed with schizoaffective disorder, and had been homeless throughout her pregnancy with the minor.

In April 2019, the social worker contacted the case manager of the Utah shelter where mother was living, who had handled mother's case "'off and on'" since mid-2018. The case manager expressed serious concerns about mother's mental health

---

[2] An allegation that the minor was subject to the court's jurisdiction pursuant to section 300, subdivision (g) (no provision for support) was later deleted from the petition.

[3] The half siblings are currently nine, seven, and six years of age. Mother received more than two years of reunification services as to the half siblings; ultimately, their biological father was awarded custody with mother receiving monitored visitation once a month.

[4] Father is not a party to this appeal, and will be mentioned in this opinion only as necessary for a full recitation of the relevant facts.

and noted that mother denied any mental health problems and had failed to show up to scheduled therapy appointments. The case manager believed mother had "'no connection at all'" with the minor, and often left the minor unsupervised and without arrangements for her care. Later that month, the social worker again spoke with the case manager, who stated that the shelter was working with mother to locate housing. The shelter had worked with outside agencies to obtain mental health services for mother, but she failed to attend her appointments. Mother's compliance with the shelter's guidelines was dependent on how mother was feeling at any given time; on some days, "mother appears focused and is able to communicate her thoughts in a well formed manner and participates in group," while on others "mother is not able to function and does not attend group, . . . does not go to work and speaks incoherently."

SSA recommended that the juvenile court sustain the petition, declare the minor to be a dependent of the court, and provide reunification services to mother and father.

The juvenile court appointed a guardian ad litem for mother at the request of her appointed counsel. Through her guardian ad litem, mother pled no contest to the amended petition; the juvenile court found the allegations of the amended petition true by a preponderance of the evidence, and declared the minor to be a dependent child of the juvenile court. The court also found that vesting custody with SSA was required to serve the minor's best interests.

The juvenile court approved SSA's proposed case plan, which contained a plan of reunification services. The case plan required mother to participate in therapy to address her mental health issues, stabilize her mental health, and show her ability to maintain her mental health and stable housing, and to rebuild her relationship with the minor. The case plan required SSA to provide referrals to appropriate resources to facilitate mother's compliance with the case plan.

4

Before the juvenile court exercised jurisdiction over the minor, an inquiry was conducted under the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.). The minor had been born in Utah, both parents were at that time residing in Utah, and mother objected to placement of the minor with the maternal grandmother in California. Counsel for SSA and the minor objected to transferring the matter to Utah without some type of court involvement and child welfare monitoring in place. The court in Utah declined to accept jurisdiction because it had no pending custody or dependency matter involving the minor. Although the minor resided for some time in Arizona, and mother later moved to Arizona, the Arizona court also declined to accept jurisdiction of the matter.

II.

*POSTDISPOSITION STATUS REPORTS*

In an interim report in September 2019, the maternal grandmother reported that the minor was developing well, and no concerns had been noted. Mother had called the maternal grandmother about once a month to ask for money or talk about the dependency case. Mother had made a single Facetime call to the minor, lasting about five minutes. Mother told the social worker she and father would be moving into their own apartment in Utah at an unspecified time, and the California courts should not be exercising jurisdiction over the minor.

In an interim report in October 2019, the maternal grandmother reported the minor was continuing to do well in her care. Mother had in-person monitored visitation with the minor in October 2019; no issues were reported. The social worker noted that "mother appears to be battling some mental health concerns, as she may appear incoherent and indirect in her communications," but that father did not believe mother's health was of concern to the minor's well-being.

In the December 2019 status review report, SSA reported that mother had not signed the case plan and that her compliance with the plan had been minimal. Mother

5

had only visited the minor twice and had not maintained regular contact with the minor, had failed to keep SSA apprised of her current address, had not obtained psychological treatment, and had not provided SSA with information on her current participation in a counseling program in Utah. The minor continued to do well in the care of the maternal grandmother.

In a February 4, 2020 addendum report, the social worker noted the mother had been inconsistent in maintaining contact with SSA, and had failed to show up for a visitation with the minor that mother had requested. When mother was in California, she could not provide an address to the social worker. Mother was reported to be homeless and was making inconsistent efforts to address her mental health issues and participate in services. In contrast to mother, the maternal grandmother was providing a stable, loving, and caring home for the minor. At this point, SSA changed its recommendation to the juvenile court to terminate family reunification services and schedule a section 366.26 hearing.

The social worker tried to call mother in February and March, but was connected to an automated message saying she was unreachable. When they finally spoke in March 2020, mother told the social worker she had moved to Arizona where she was working, and she had met with a doctor; mother provided the social worker the name of the doctor—"Wendy"—and the name and phone number of the medical clinic. Mother continued to insist that she did not need to participate in a behavioral health program and she did not need medications. Mother also told the social worker that the maternal grandmother was subject to federal warrants and should not be caring for the minor. The social worker later contacted the medical clinic, which denied having a doctor named Wendy on staff and denied having mother as a patient.

When the social worker spoke with mother in May 2020, mother claimed to have hired a private investigator and requested a report that the maternal grandmother "'is a criminal and wanted by the judge and the President of the United States.'" She

6

continued to claim the California court had no jurisdiction over the case and informed the social worker she was planning to sue everyone after winning the case. Mother indicated she planned to continue residing in Arizona. When asked if she was participating in counseling or mental health services, mother replied, "'I've done it all, I've done 730 evaluations, I've done everything with mental services, I've been harassed since the case began.'" When the social worker explained that she would need to provide proof of participation in a mental health program to establish her mental and emotional stability, mother quickly ended the call.

The social worker made several attempts to call mother in June and July, but was unable to leave a message because mother's voicemail was full. The maternal grandmother had not had any contact with mother in several months. SSA left messages for mother on her phone, which were not returned. Mother's progress toward complying with the case plan remained minimal.

By the time the August 2020 addendum report was filed, mother still had not provided information regarding the counseling and support program she claimed to have participated in while in Utah. The maternal grandmother reported that mother had not made any attempts to contact her or the minor "in some time." Father advised the social worker he was living in Mexico and had no plans to return to the United States.

In a November 2020 status review report, SSA noted that mother had been living in Arizona since November 2019, but had not participated in any counseling services. Mother had no in-person visits with the minor during the preceding 12 months and was inconsistent in her contact with the minor. "During this reporting period, [SSA] continues to have concerns regarding the mother's mental health stability and future care of the child. The mother previously had dependency cases with the child's half siblings. The mother was offered Family Reunification services from her prior dependency case and failed to follow through with the court ordered services. The mother denies having unresolved mental health issues and is argumentative during contacts with the

7

undersigned. The undersigned continues to have concerns regarding the allegations that led to the removal of the child and the half siblings in the past, as the mother has stated [she is] not willing to address her mental health stability. The mother has denied having a problem and is not open to seeking services for mental health. The mother has not visited the child during this evaluation period."

### III.

### *18-MONTH REVIEW HEARING*

In November 2020, at a contested, combined 6-month, 12-month, and 18-month review hearing, the juvenile court admitted into evidence all of SSA's reports. The social worker admitted that he had not provided any referrals for individual counseling to mother until the day before that hearing. He explained that he believed referrals were unnecessary because mother had advised SSA she was enrolled in services in Utah. After learning that mother was no longer receiving services in Utah, the social worker tried to get mother enrolled in services, but she refused to participate. After moving to Arizona, mother told the social worker she was participating in services there, she did not need to participate in services, and she was "not open to seeking services for mental health" because she did not have mental health issues.

The social worker also admitted that although the record reflected that mother suffered from schizoaffective disorder, he did not provide her with any referrals to a psychiatrist or psychologist specializing in that diagnosis.

Although the social worker was aware of hostility between mother and the maternal grandmother, and was aware that mother had complained of the maternal grandmother's interference in her ability to visit virtually with the minor, he had not taken any steps to change the situation. He explained that the parents had never requested a visitation schedule and were "open to getting in contact with the caregiver to arrange visitations by phone or by video chats."

8

Mother testified at the hearing that the social worker had never given her a referral to a psychiatrist or psychologist until two days before the hearing. Mother admitted she had threatened to sue the social worker if he failed to provide her with "the proper sanctioned government programs." Mother explained that she wanted to do what was necessary to get the minor back.

The juvenile court found by clear and convincing evidence that reasonable services had been provided or offered to mother, and that mother's progress toward alleviating or mitigating the circumstances that led to the minor's removal were minimal. The court then terminated reunification services, and set the matter for a section 366.26 hearing.

Mother timely filed a notice of intent to file a writ petition challenging the juvenile court's order.

DISCUSSION

The juvenile court found by clear and convincing evidence that reasonable services had been provided or offered to mother. Mother contends that finding was in error because SSA failed to provide her with reasonable services tailored to the family's specific needs. "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

Whenever a child is removed from a parent's custody, the juvenile court must order reunification services to an eligible parent. (§ 361.5, subd. (a).) Section 361.5 requires a good faith effort on the part of SSA to provide reasonable

9

services "'specifically tailored to fit the circumstances of each family'" and "'designed to eliminate those conditions which led to the juvenile court's jurisdictional finding.'" (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1474.)

"[I]n reviewing the reasonableness of the reunification services provided by the Department, we must also recognize that in most cases more services might have been provided, and the services which are provided are often imperfect. The standard is not whether the services provided were the best that might have been provided, but whether they were reasonable under the circumstances." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969; see *Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164 ["adequacy of reunification plans and the reasonableness of SSA's efforts are judged according to the circumstances of each case"].)

Mother cites several cases for the proposition that the juvenile court has discretion to continue the 18-month review hearing if reasonable services were not provided. (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1428 [failure to facilitate visitation and failure to provide reasonable services to developmentally disabled parents where there was no allegation of physical or emotional abuse justified continuance of 18-month hearing]; *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1796 [juvenile court had discretion to continue reunification services past 18 months when the mother made extraordinary progress despite being hospitalized for most of the reunification period]; *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1209, 1216-1217 [juvenile court has discretion to extend dependency beyond 18 months if reasonable reunification services have not been provided; court must "consider the services already provided . . . , the likelihood of success of any further reunification efforts, whether [the child]'s need for a prompt resolution of his status outweighs any benefit from further reunification services and such other factors as the parties may bring to the court's attention"]; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1778-1779 [if no reunification services plan was ever developed, juvenile court has discretion, on a showing of good

10

cause, to extend the dependency proceedings beyond the 18-month period].) None of these cases, however, is relevant to the issue before the juvenile court in this case.

In this case, the juvenile court found that, even at the 18-month mark in the proceedings, mother was still denying both the existence of a mental health issue and any need for services. The court therefore found that mother would have been unwilling to cooperate with any services that might have been, but were not, provided. The court further found that, in light of mother's failure to follow through with referrals provided in the earlier case in which she had lost custody of the minor's half siblings, "the chances of her suddenly becoming able to cooperate [were] not there." (See *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1460 ["the juvenile court may consider services rendered to and efforts made in connection with dependent siblings when deciding the appropriate disposition for a dependent child of the juvenile court"].) The court also noted that before detention, mother had denied the minor's existence, refused to say where the minor was, and stated that she would move to another state to prevent the minor from being taken from her, all of which reinforced the juvenile court's belief that mother was unlikely to ever follow through and be reunited with the minor.

The juvenile court's findings were supported by substantial evidence from which a reasonable fact finder could have found it highly probable that the facts were true. Before this case even started, mother had lost custody of three children due, in part, to her failure to acknowledge and address her mental health issues. The Utah shelter case manager had serious concerns regarding mother's mental health, and noted that mother had failed to participate in any mental health services and denied having mental health problems.

Throughout the dependency proceeding, mother either denied any need for mental health services or claimed she had completed all services. Mother's behavior in the dependency proceeding remained erratic, as she failed to visit or communicate consistently with the minor, failed to keep the social worker apprised of her residence and

11

contact information, was often incoherent in her communications, and accused the maternal grandmother of criminal activity. When mother provided contact information for a medical clinic at which she had allegedly been seen, the social worker's follow up showed mother was not a patient there and the doctor she claimed to have seen did not exist. Mother's contact with SSA was sporadic, at best, often confrontational, and never cooperative. Mother made it clear she did not want help and would not accept help, despite the fact her statements and actions plainly showed she needed help.

"The record reveals that the service plan offered to [the parent] was found 'appropriate and necessary' by the juvenile court, but that [the parent] showed little interest in complying with its requirements. Reunification services are voluntary, and cannot be forced on an unwilling or indifferent parent." (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220.)

DISPOSITION

The petition for a writ of mandate/prohibition is denied.

FYBEL, J.

WE CONCUR:

ARONSON, ACTING P. J.

IKOLA, J.

12